UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SIMRANJIT SINGH,

             Petitioner,

     v.

PAMELA BONDI, et al.,

             Respondents.

No. 1:26-cv-0396 DC CSK P

FINDINGS AND RECOMMENDATIONS

Petitioner, a citizen of India who entered the United States on or around March 7, 2023, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner is represented by counsel.  On March 7, 2023, petitioner was released on his own recognizance pursuant to 8 U.S.C. § 1226.  On or about September 6, 2025, petitioner was arrested by Immigration and Customs Enforcement ("ICE") when he appeared for a routine check-in.  This habeas action concerns petitioner's re-detention.  For the following reasons, this Court recommends that the petition be granted and petitioner be released immediately.

I.      FACTUAL BACKGROUND[1]

Petitioner is a citizen of India who entered the United States on or about March 4, 2023, at

---

[1]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 18.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  Respondents do not contest petitioner's factual allegations.  (See generally ECF No. 11.)

or near Lukeville, Arizona.  (ECF No. 1 at 21 (Notice to Appear).)  Petitioner entered without inspection.  (ECF No. 1 at 2.)  On March 7, 2023, petitioner was released pursuant to an Order of Release on Recognizance pursuant to section 236 of the Immigration and Nationality Act ("INA"), which is codified at 8 U.S.C. § 1226.  (ECF No. 1 at 2, 25 (Order of Release).)

On April 28, 2023, the Department of Homeland Security ("DHS") issued petitioner a Notice to Appear on August 18, 2023.  (ECF No. 1 at 21.)  The Notice to Appear noted petitioner was placed in removal proceedings under INA § 240 (8 U.S.C. § 1229a).[2]  (Id.)

On September 6, 2025, petitioner reported for a routine ICE check-in and was arrested and re-detained.  (ECF No. 1 at 2.)

## II.    PROCEDURAL BACKGROUND

On January 19, 2026, petitioner, through counsel, filed his verified petition for writ of habeas corpus.  (ECF No. 1.)  On January 26, 2026, petitioner filed a motion for a temporary restraining order.  (ECF No. 4.)  On January 27, 2026, the Honorable Dena M. Coggins denied petitioner's motion for a temporary restraining order without prejudice where petitioner was detained for over ninety days before filing his motion but did not explain in his motion why he did not seek injunctive relief sooner, and referred this matter to the undersigned for further proceedings.  (ECF No. 5.)  On January 30, 2026, this Court directed respondent to file a response to the petition within seven days and ordered that petitioner may file a reply within seven days after being served with the response.  (ECF No. 6.)

On February 10, 2026, petitioner filed a motion for judgment based on respondents' failure to comply with the January 30, 2026 order where they did not file a response.  (ECF No. 7.)  On February 12, 2026, this Court ordered respondents to file an answer or motion to dismiss by 5:00 p.m. on February 13, 2026, and cautioned that failure to do so would be construed as a non-opposition to granting the relief requested in the petition.  (ECF No. 8.)  On February 14, 2026, at 4:21 p.m., respondents filed an opposition to preliminary injunction and motion to

---

[2]  Removal proceedings pursuant to INA § 240 (8 U.S.C. § 1229a) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1).

dismiss the petition.  (ECF No. 11.)  On February 15, 2026, petitioner filed his reply.  (ECF No. 12.)  Though respondents did not explain their untimely response, the Court will accept and consider respondents' filing where petitioner was able to promptly file a reply.  Briefing is now complete.

**III.    LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

**IV.    DISCUSSION**

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  The petition raises three causes of action.  In the first cause of action, petitioner argues he was unlawfully denied release on bond, in violation of 8 U.S.C. § 1226(a).  (ECF No. 1 at 12.)  In the second cause of action, petitioner contends he was unlawfully denied release on bond in violation of bond regulations at 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.  (Id. at 12-13.)  In the third cause of action, petitioner argues that he is being detained in violation of his right to due process under the Fifth Amendment.  (Id. at 13-14.)

In their opposition and motion to dismiss, respondents do not argue that petitioner is a flight risk or a danger to the community.  (ECF No. 11.)  Instead, respondents argue that

petitioner is detained as an applicant for admission under 8 U.S.C. § 1225(b)(2) and is not entitled to a bond hearing because he is subject to mandatory detention.  (ECF No. 11 at 1-2.)  Respondents also rely on Buenrostro-Mendez v. Bondi, 2026 WL 323330 (5th Cir. Feb. 6, 2026) to support their position that § 1225(b)(2) applies.  Respondents further argue that because petitioner is subject to mandatory detention he has no liberty interest.  (Id. at 2.)  In the alternative, respondents contend the Court should stay this matter pending resolution of Rodriguez v. Bostock, No. 25-6842 (9th Cir.), and Benavides Carballo v. Andrews, No. 25-6533 (9th Cir.) (from E.D. Cal. 1:25-cv-00978-KES-EPG).  (Id.)

### A.    Statutory Claims (Claims One and Two)

The first issue here is whether petitioner, who has lived in the United States since March 2023, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends, or whether, petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under Section 1226(a), the Government has broad discretion whether to release or detain the individual.  See id.  Section 1226(a) provides several layers of review for an initial custody determination and it confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.

Petitioner contends that he is not "seeking admission" and should be subject to Section 1226(a) consistent with DHS's former practice[3] and, thus, he is entitled to a bond hearing. Respondents argue that section 1225(b)(2) is the correct authority for petitioner's detention, which does not entitle him to a hearing.

---

[3]  Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

This Court finds that § 1226 applies to petitioner.  First, immigration authorities released petitioner on his own recognizance pursuant to § 1226 on March 7, 2023, as expressly provided in the Order of Release on Recognizance.  (ECF No. 1 at 25 (issued "[i]n accordance with section 236" of the INA,[4] releasing petitioner on his own recognizance).)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondents' new interpretation of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at *3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  Salcedo

---

[4]  Section 236 of the INA is codified at 8 U.S.C. § 1226; section 235 of the INA is codified at 8 U.S.C. § 1225.

Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondents' reliance on Buenrostro-Mendez, 2026 WL 323330, is unavailing. In Buenrostro-Mendez, the Fifth Circuit recently agreed with respondents' interpretation of § 1225(b)(2). This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL 413839, at *1 n.1 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who have lived in the United States for years without having been admitted. See Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)). Respondents cite to the Buenrostro-Mendez decision. Doc. 9 at 1. The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case.

This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above. See id.; see also Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D.W. Va. Feb. 9, 2026) (same). In addition, as in Gurvinder Singh, petitioner raises a due process claim, which the court in

6

Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner has resided in this country for over two years and five months since March 7, 2023, when petitioner was released on his own recognizance pursuant to § 1226, until petitioner was arrested and re-detained on September 6, 2025, after he reported to ICE.  Petitioner's re-detention on September 6, 2025, was not upon his arrival to the United States.  As such, petitioner should have been provided a bond hearing before his re-detention.

### B.      Due Process Claim (Claim Three)

Petitioner also argues that his detention violates his right to due process under the Fifth Amendment.  Respondents argue that petitioner does not have a due process right to a bond hearing because § 1225(b)(2) does not provide for a bond hearing.  Respondents' asserted compliance with § 1225(b)(2) does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a

7

statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison."  Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in her "continued liberty."  Id. at 481-84.

Here, petitioner's release on his own recognizance on March 7, 2023, pursuant to § 1226 is similar because petitioner was permitted to live in the United States, subject to ICE supervision, but free of custody for almost 2.5 years.  Such time allowed petitioner to form "enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  This Court finds that petitioner's original release on his own recognizance and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release pursuant to 8 U.S.C. § 1226(a) was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk.  See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's

8

discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the foregoing, the Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226(a) created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4. This Court concludes that petitioner has a protected liberty interest in his release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F. 4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

9

First, petitioner has a private interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over two years and five months, petitioner was free from custody before his re-detention. The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor.  "[T]he risk of erroneous deprivation [of liberty] is high when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); Salcedo Aceros, 2025 WL 2637503, at *12 (finding that the noncitizen's risk of erroneous deprivation was high because a bond hearing would likely reveal that the noncitizen still presented no public safety or flight risk).  Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not contend that petitioner is or was a flight risk or a danger to the community.  (See generally ECF No. 11.)  In addition, respondents do not contend that petitioner has a criminal record.  (Id.)  The fact that petitioner reported to ICE for a routine check-in on September 6, 2025 (ECF No. 1 at 2), demonstrates he was not a flight risk.

Here, petitioner has been detained since he reported for "a routine ICE check-in" on

September 6, 2025 (ECF No. 1 at 2), without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a flight risk or a danger to the community. Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose.  See Zadvydas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, and he lived in the country for over two years and five months on release.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was re-detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.

11

"Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reason a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R., 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is also entitled to relief on his due process claim.

## V.   RESPONDENTS' MOTION TO DISMISS

For the reasons set forth above, respondents' motion to dismiss should be denied. In addition, respondents' alternative request that this matter be stayed pending rulings by the Ninth Circuit should also be denied.

## VI.   CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be granted.

2. Respondents' motion to dismiss (ECF No. 11) and request to stay this matter be denied.

3. Respondents be ordered to IMMEDIATELY RELEASE petitioner Simranjit Singh, and be ordered to provide petitioner with a copy of the release order at or near the time of release.

4. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

5. The parties be directed to file, within **seven** days of the adoption of these findings and recommendations, a joint status report addressing petitioner's status.

6. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of

the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 19, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/sing0396.157.mtd.imm

13